IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

Plaintiff,

v.

$41,800.00 IN US CURRENCY,

Defendant.

CIVIL No. 09-1185 (CVR)

**OPINION AND ORDER**

**INTRODUCTION**

On February 25, 2009, plaintiff, the United States of America, filed a verified complaint and obtained warrant of arrest *in rem* against the property consisting of $41,800.00 in U.S. currency claiming the currency was property and/or proceeds traceable to exchange of controlled substances, and as such, subject to forfeiture under Title 18, United States Code, Sections 981(a)(1)(A) and (C). (Docket No. 1).

Claimant Carlos Méndez-Ruiz (hereafter "claimant Méndez-Ruiz") filed an answer to the verified complaint which the court order to be stricken and be re-filed to eliminate some allegations. (Docket Nos. 11-13). Thereafter, claimant Méndez-Ruiz sought timely reconsideration and filed its consent to proceed before a U.S. Magistrate Judge. On October 23, 2009, the presiding judge denied reconsideration and approved the consent on October 25, 2009. (Dockets Nos. 26, 24 and 27).

On April 20, 2010, claimant Méndez-Ruiz filed a Motion to Dismiss for Lack of Jurisdiction and/or for Summary Judgment with a Statement of Uncontested Facts in support thereof. (Docket Nos. 36 and 39). On May 25, 2010, plaintiff United States filed a

Motion for Summary Judgment, Memorandum of Law and Statement of Uncontested Facts in support thereof (Docket No. 46) which claimant Méndez-Ruiz opposed on July 12, 2010. (Docket Nos. 51). Upon the parties' consent to jurisdiction by a Magistrate Judge, both dispositive motions were entertained and denied by the undersigned. (Docket No. 52).

On October 7, 2010, the case was called for Non-Jury Trial. The government presented as witnesses: Raúl Valle (K-9 handler of Garrison and Sloan), José Melón (Fed Ex Security Specialist) and DEA SA Virgilio Pérez. Claimant Méndez-Ruiz testified on his own behalf. The parties stipulated that María Ruiz-Orlando (claimant's mother) was not going to testify at trial. In lieu, Mrs. Ruiz-Orlando's testimony at her deposition (Exhibit 11) was submitted. (Docket No. 65) Several exhibits from both parties were introduced into evidence. (Docket No. 66 and 67).

### FINDINGS OF FACTS

The following facts were stipulated by the parties prior to trial (Docket No. 64):

1. On February 5, 2009, a Grand Jury in the U.S. District Court for the District of Puerto Rico charged claimant Carlos Méndez-Ruiz with conspiracy to possess with intent to distribute five hundred (500) grams or more of cocaine, in violation of Title 21, United States Code, §§ 841(a)(1) and 846.[1]

2. On June 17, 2008, FedEx Security Specialist José Melon informed DEA agents that FedEx parcel airway bill #864689560595 was mailed by Amin Rojas (as the listed

---

[1] A review of the ECF system shows the criminal case against claimant originated as a criminal complaint in Case No. 09-76M which was later merged with Criminal Case No. 09-49 (GAG). No forfeiture allegation was included in the Indictment. The criminal case is currently pending trial.

sender) at 1914 Kerrigan Ave., Apt. 1, Union City, NJ 07807, with no telephone number listed. The parcel was addressed to Carlos Méndez (as the listed recipient) at Urb. Santa Juanita DD24, Calle 30, Bayamón, PR 00956, with no telephone number listed.

      3.      Further inspection of FedEx parcel airway bill #86489560595 revealed that it contained one D-Link desktop switch box containing an undetermined amount of U.S. Currency (later determined to be $41,800.00). The money was neatly stacked inside the box and wrapped with carbon paper.

      4. Méndez Ruíz claims that his ex-companion, Rosa Brito, sent the FedEx Package, even though the label shows it was an "Amin Rojas," whom he does not know. According to Méndez-Ruiz, he thought Brito was personally going to send it, and never knew that Rojas did.

      5. Méndez-Ruiz alleges that he did not know what form of mail the $41,800.00 would be sent through, and he never bothered to ask Rosa Brito what shipping method she would use.

      6. Also, Méndez-Ruiz did not know the manner in which the package was going to be arranged or packaged, nor did he ask Rosa Brito to package it a certain way.

      7. Between the months of February and June of 2008, Méndez-Ruiz claims to have traveled to New Jersey several times - six (6) or seven (7) times - to buy a property there and establish residency. According to Méndez-Ruiz, every time he flew to New Jersey, he carried some cash so that the money could be available when he was ready to buy the property. Yet he has no idea how much cash he carried each time, and therefore, no way of knowing how much money he had accumulated/saved to buy the property. When

Méndez-Ruiz changed his mind about moving to New Jersey, he had the money returned to him via FedEx.

8. Méndez-Ruiz has no idea why he did not personally bring the $41,800.00 back to Puerto Rico. And, once he decided he was not going to buy property in New Jersey, he took no affirmative steps to make sure that he received the money he had accumulated in New Jersey. He claims to have no idea how he was going to receive the money.

9. According to Méndez-Ruiz, during his visits to New Jersey he stayed at hotels - he could only produce hotel receipts for two (2) of his stays - even though his girlfriend at the time, Rosa Brito, lived in New Jersey herself, and the very reason he was moving there was to be with her. The reason for not staying with her - as opposed to staying at a hotel - was that he was "more comfortable" staying at a hotel.

10. Méndez-Ruiz stated that, when he traveled to New Jersey with the aforementioned cash to buy property, he just handed it over to Rosa Brito - the very same person he did not feel comfortable staying with - who would store the money in her house, even though Méndez-Ruiz knew the money was safer in a bank account. His reason for not keeping the money in a bank account: he was "clumsy, unwise." And he has no idea, and he had not planned for, what manner he would have used the cash money to buy a property.

11. Méndez-Ruiz claims to have had a realtor to help him find properties in New Jersey, but he did not know the name or address of the realtor, nor did he sign any type of contract or agreement with the alleged realtor.

12. Méndez-Ruiz did not file any income tax returns between 1998 and 2006. During those years, his only source of income was $5,000 from gambling in a boxing match. While

his debts include: a $150,000 loan from December, 2003, for which he still pays $2,000 per month; a $60,000 loan from September, 2005, for which he still pays $600 per month; a credit card balance of $9,000 in debt as of January, 2008, which has not been paid off, and for which he pays $1,500 per month; child support - for which, Méndez-Ruiz does not remember the amount; $30 - 50 per month for the energy bill; $19-29 per month for the water bill; $150 per month for food.

13. In addition, Méndez-Ruiz did not have a bank account from 2003 to 2008. The bank accounts that he did have prior to that were closed for lack of sufficient funds. In fact, in 2004, he spend 15 days in jail because he was late on his child support payments.

14. Méndez-Ruiz claims that he and his companion owned two businesses, Rubén Pizza and Personal Mailbox, which operated from 1997 to 2007. They were located on Calle 30, DD-24, Santa Juanita, Bayamón. Even after the businesses closed, he visited the building on a daily basis to check on it - make sure "everything was in order, that everything was fine." In 2008, he had packages mailed there- as opposed to his house - between six and eight times - because it was "more feasible" than receiving them at home.

15. Méndez-Ruiz kept the Santa Juanita address as his postal address, even though he was living at Condominio River Park in Bayamón.

16. The Condominio River Park apartment, valued at $95,000.00, was bought as follows: Méndez-Ruiz took out a mortgage with Western Bank for $60,000; he issued two credit card checks, one for $13,000, and another for $12,000; and he paid the remainder to the seller, a small amount of money at a time, in Western Bank money orders. Méndez Ruíz still pays $600 per month for the mortgage loan.

17. When Méndez-Ruiz sold the Condominio River Park apartment to his mother in February of 2008, he cashed the $59,000 check into smaller amounts ranging between $2,000 and $10,000, over two (2) different days. Méndez-Ruiz claims it was the bank who chose to split the check into these smaller cash transactions.

18. So, on February 6, 2008, according to Méndez-Ruiz, he was carrying $59,000 on his person, but did not deposit it in a bank account or use it to open an account for that purpose.

## LEGAL DISCUSSION

**I.     General Standard for Forfeiture**.

In a suit or action brought under any civil forfeiture statute for the civil forfeiture of any property the burden of proof is on the government to establish, by a preponderance of the evidence, that the property is subject to forfeiture. The government may use evidence gathered after the filing of a complaint for forfeiture to establish its burden; and if the government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the government shall establish there was a substantial connection between the property and the offense. To carry its burden in a civil forfeiture action, the government must satisfy the requirements of both the applicable forfeiture statute and CAFRA.

The federal forfeiture statute defines rules as to who may intervene and when they must do it. By virtue of the roots of *in rem* jurisdiction in admiralty law, the procedures for intervention in civil forfeitures are governed by the Supplemental Rules for Certain Admiralty and Maritime Claims. *See* Title 18, United States Code, Section 981(b)(2) (1994)

United States v. $41,800 In U.S. Currency
Civil No. 09-1185 (CVR)
Opinion and Order
Page No. 7

(amended 2000); United States v. One Dairy Farm, 918 F.2d 310, 311 (1st Cir. 1990).

Under CAFRA[2], as amended, which applies to civil forfeiture cases like this one which were commenced on or after August 23, 2000, the government's burden of proof at trial from mere probable cause (the old standard) to the preponderance of the evidence was increased. *See* 18 U.S.C. § 983(c)(1). CAFRA makes clear that the pleading requirements imposed by cases such as U.S. v. One Lot of U.S. Currency ($36,634), 103 F.3d 1048 (1st Cir. 1997) no longer apply. However, it is appropriate to rely upon forfeiture case law decided before the enactment of CAFRA even though those cases applied the less-burdensome probable cause standard, "[f]actors that weighed in favor of forfeiture in the past continue to do so now-with the obvious caveat that the government must show more or stronger evidence establishing a link between forfeited property and illegal activity." *See* United States v. Funds in Amount of $30,670.00, 403 F.3d 448, 469 (7th Cir. 2005). Even if the government satisfies the requirements of §§ 881(a)(7) and 983, it does not necessarily follow that the forfeiture is warranted, since Section 983(d) contains an innocent owner defense.

However, before such a defense may be raised, claimants must be able to establish standing. Standing is a threshold consideration in all cases, including civil forfeiture cases. *See* United States v. Cambio Exacto, S.A., 166 F.3d 522, 526 (2d Cir. 1999); *see also* McInnis-Misenor v. Me. Med. Ctr., 319 F.3d 63, 67 (1st Cir. 2003). Because civil forfeiture is an *in rem* proceeding, the property subject to forfeiture is effectively the defendant in said

---

[2] Title 21, United States Code Annotated, Section 881(a)(6).

case. Thus, defenses against the forfeiture can be brought only by third parties, who must intervene.

A person claiming an interest in property to be forfeited submits his/her claim under the Supplemental Rule for Certain Admiralty and Maritime Claims, Rule C( 6)(a) by filing a verified statement identifying the interest or right. Such claimant must refute the government's *prima facie* case either by demonstrating that the property was not in fact used for the specified illegal activity, or by proving the claimant did not know about or consent to the illicit activity; the second of these avenues is commonly called the innocent owner's defense.

Federal forfeiture statutes must be narrowly construed because of their potentially draconian effect. *See* Barbara J. Van Arsdale, J.D., *Validity, Construction, and Application of Civil Asset Forfeiture Reform Act of 2000 (CAFRA)*, 195 A.L.R. Fed. 349 (2004). Relying on United States v. Parcel of Land, Buildings, Appurtenances and Improvements, Known as 92 Buena Vista Avenue, Rumson New Jersey, 507 U.S. 111, 113 S.Ct. 1126 (1993) in construing the civil forfeiture statutes as they then existed, a plurality of the Supreme Court stated that the government's title was not perfected until forfeiture was decreed, and it allowed the related back to the time of the crime. *See id*. at 126-27, 113 S.Ct. 1126.

To establish standing in civil forfeiture proceeding, the claimant must demonstrate some ownership or possessory interest in the property at issue. Title 18, United States Code Annotated, Section 1963. Property interest less than ownership, *e.g.* possessory interest, is sufficient to create standing to contest federal civil forfeiture proceeding. United States v. One 2001 Cadillac Deville Sedan, 335 F. Supp. 2d 769 (E.D. Mich. 2004). Still, in United

United States v. $41,800 In U.S. Currency
Civil No. 09-1185 (CVR)
Opinion and Order
Page No. 9

States v. 8 Curtis Avenue, Middleton, MA, 2003 WL 470579 (D. Mass. 2003), the court found that a plain reading of the statute suggests that Congress did intend to allow the enforcement of forfeiture rights against the interest of a person holding property as a tenant by the entirety even where the other holder is an innocent purchaser. State law determines whether claimants have a property interest in property subject to criminal forfeiture, but federal law determines whether or not that interest can be forfeited. United States v. Hooper, 229 F.3d 818 (9th Cir. 2000).

The government claims in the instant case the $41,800.00 in U.S. currency was property and/or proceeds traceable to exchange of controlled substances, and as such, subject to forfeiture under Title 18, United States Code, Sections 981(a)(1)(A) and (C). (Docket No. 1). If the government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, as in this case, the government shall establish there was a substantial connection between the property and the offense. Applying the above standard to this case, after assessing credibility in this case and carefully reviewing the evidence submitted, we find the government has not met its burden that the $41,800.00 is subject to forfeiture.

It is undisputed that, at the time the package in this case was mailed, claimant Méndez-Ruiz was the object of a criminal investigation as shown by the DEA Reports of Investigations. (See Exhibits 1-7). However, DEA Virgilio Pérez admitted on the stand that he was not aware of claimant's investigation at the time the $41,800.00 were seized. Moreover, we note that in the criminal case for controlled substances violations eventually filed against claimant Méndez-Ruiz in Criminal No. 09-49 (GAG) no forfeiture allegation

was included, thus, leading the undersigned to believe the government was not able to link the $41,800.00 to the drug charges.

No credible evidence was presented to the court to prove the $41,800.00 was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense. The government only limited itself to prove (through the testimony of its three witnesses) that the FedEx package in question met the profile of a suspicious package inasmuch as the mailing label had no contact information from the sender, the box was heavily taped, the package was paid in cash via overnight service, the mailing label indicated it contained a computer monitor which could not fit in the box and stated the value of the content was $1.00, among others. The government also proved K-9 Costa alerted to drugs or contamination of drugs in the FedEx package in question. Thus, there is no doubt, the government had reason to open the package at the time.

However, the government has failed to prove the content of the package ($41,800.00) was linked to illegal activity or was the proceeds of the same. It is uncontested that no controlled substances were found with the currency inside the FedEx package in question. The fact that, once the package was opened, the government presented evidence that, the way the currency was wrapped in carbon paper is the typical way contraband is concealed when mailed, is not sufficient to meet its burden when we take into account claimant Méndez-Ruiz' version of facts, as corroborated by his mother's testimony in her deposition and the exhibits submitted to show the legitimacy of the real estate sale from which claimant avers he obtained the contested currency. (See Exhibits A1, A2, A3, A4 and A5, B and C).

Claimant Méndez-Ruiz testified the monies sent to him ($41,800.00) are the legal proceeds he obtained from the sale of real estate property he sold to his mother on February 1, 2008. The monies had been previously carried by him to New Jersey and left at this girlfriend's house to be used for the purchase of a property in New Jersey. The sale of claimant's condominium unit at River Park to his mother and the check issued on February 2008, which claimant cashed but did not deposit in any bank account are uncontested. A contemporaneous notarized sale/purchase contract dated February 1, 2008 (Exhibit C) supports said averment. A $59,000.00, check received from said sale was cashed by claimant at the Doral Bank in Plaza del Sol in Bayamón, Puerto Rico. The check issued and endorsed for said amount is available and was submitted as Exhibit A-1. The buyer's statement of Ms. Ruiz-Orlando from a bank account (See Exhibit A-2) also is showed to have withdrawn the same amount of $59,000.00, which was further confirmed by Ms. Ruiz-Orlando in the deposition testimony she provided on February 18, 2010, whose testimony the plaintiff, United States, had stipulated and is thus not in controversy. (See Exhibits A1, A2, A3, A4, A5, B and C).

We note the factual version provided by claimant Méndez-Ruiz as to the real estate sale is corroborated, not only by the above mentioned documents and the factual stipulations mentioned herein, but also by the testimony of Ms. Ruiz-Orlando at her deposition which was also stipulated in full. (See Exhibit 11).

Moreover, the proximity between the sale of the condominium on February 2008 and the seizure of the currency on June 17, 2008 also militates in favor of claimant's version of facts that the currency at issue is the proceeds form a legal real estate sale. In fact, Exhibits

D-2 and D-3, which were admitted without objection from the government, show claimant Méndez-Ruiz traveled to New Jersey and stayed at a hotel from February 16-18, 2008 and from March 1-2, 2008. Also, Exhibit D-5 (admitted without objection from the government) is a boarding pass for claimant for June 6, 2008 from San Juan to Newark. These documents credit claimant's testimony under oath that he took the currency at issue with him to New Jersey on several occasions and left the monies with his former girlfriend after the sale of the property.

Also, it is undisputed claimant Méndez-Ruiz has a simple life style not compatible with a major drug dealer as alleged by the government. Claimant Méndez-Ruiz testified under oath he resides with his mother and has two old (2) vehicles, to wit, a 1998 Chevrolet van and a 1987 Buick Regal. Claimant Méndez-Ruiz has two (2) properties under his name, to wit, an apartment under his name which belongs to his mother and a property in Bayamón which he obtained in September/October 2009 in a transfer at the Bayamón Court. Claimant Méndez-Ruiz does not own any jewelry and has not traveled outside Puerto Rico with the exception of some travel to New Jersey (as credited by Exhibits D-2, D-3 and D-5) to visit his former girlfriend, to whom he entrusted the currency at issue.

Finally, although the prosecutor tried to impeach claimant Méndez-Ruiz on some details of his testimony, through the use of the transcript of his prior deposition, we do not award much weight to any inconsistencies which may have arisen inasmuch as they are of little relevance to our determination. Claimant Méndez-Ruiz has been consistent in his

account as to the origin of the $41,800.00 since the sworn statement he provided in July 30, 2008 (Exhibit B), which was subscribed more contemporaneously to the events which lead to this case on June 17, 2008, to the present.

Thus, after assessing credibility of the testimonies presented at trial and after reviewing the documentary evidence submitted, we conclude claimant Méndez-Ruiz was the legal owner of the currency ($41,800.00) plaintiff seeks to forfeit as the product of the sale of a real estate property at River Park to Ms. María Ruiz-Orlando. Accordingly, the currency object of the forfeiture proceedings traveled legally from Puerto Rico to New Jersey.[3]

## CONCLUSION

In accordance with above discussed, the Complaint for Forfeiture in Rem is hereby DISMISSED WITH PREJUDICE and, as a result thereof, the amount forfeited of $41,800.00 shall be returned to claimant Carlos Méndez-Ruiz.

Judgment is to be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 14th day of October of 2010.

s/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ-RIVE
UNITED STATES MAGISTRATE JUDGE

---

[3] The fact that claimant has not filed income tax returns between the dates at issue and claimant's financial situation is not consonant with the income indicated to have been received as alleged by the government loses importance after we conclude claimant Méndez-Ruiz was the legal owner of the currency at issue.